# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES ANTHONY YOUNG, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3601 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Charles Anthony Young, a state inmate proceeding *pro se*, filed this habeas

proceeding under 28 U.S.C. § 2254 challenging his conviction and sentence for aggravated

robbery with a deadly weapon.  Respondent filed a motion for summary judgment (Docket

Entry No. 12), to which petitioner responded (Docket Entry No. 26).

Based on consideration of the pleadings, the motion and response, the record, and the

applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this

case for the reasons that follow.

### *Procedural Background*

Petitioner was convicted of aggravated robbery with a deadly weapon in Harris

County, Texas, and sentenced to forty-five years incarceration.  The conviction was affirmed

on appeal.  *Young v. State*, No. 14-05-01153-CR (Tex. App.—Houston [14th Dist.] 2006, no

pet.).   Young attempted to file a petition for discretionary review, but it was struck as noncompliant and he did not refile.[1]   *Young v. State*, PDR No. 139-07.   Petitioner's application for state habeas relief, filed on June 9, 2008, was denied by the Texas Court of Criminal Appeals on November 26, 2008.  *Ex parte Young*, Application No. 70,342-02.

Petitioner here raises the following grounds for federal habeas relief:

1.     Trial counsel was ineffective in:

(a)     failing to retain a fingerprint expert;

(b)     failing to interview the prior owner of petitioner's Cadillac;

(c)     failing to argue during closing argument that petitioner was working during the time of the offense and that he drove a gray Cadillac;

(d)     failing to argue during closing argument that a Crime Stoppers tip suggested that "Michael Lewis" committed the offense;

(e)     failing to produce color pictures of the Cadillac;

(f)     failing to file a motion for discovery to obtain the plastic restraints and complainant's medical records;

(g)     failing to retain an investigator to locate other witnesses or suspects; and

(h)     failing to object to the jury instruction on the law of parties.

---

[1]Petitioner alleges that the Texas Court of Criminal Appeals erred in striking his petition for discretionary review for his failure to attach a complete copy of the intermediate court's opinion. Even assuming this were a cognizable federal habeas claim, a review of the petition appearing in the state court records reveals that only a one-page summary of the opinion was attached to the petition.

2.      Appellate counsel was ineffective in:

   (a)     failing to raise the above instances of ineffective assistance of trial counsel; and

   (b)     failing to challenge the sufficiency of the evidence regarding the law of parties.

3.      The trial court erred in:

   (a)     failing to grant a mistrial;

   (b)     allowing hearsay testimony; and

   (c)     allowing testimony regarding a gun found in petitioner's vehicle.

4.      The evidence was factually and legally insufficient to support the conviction.

5.      Petitioner was denied compulsory process.

Respondent argues that these grounds are procedurally defaulted and/or without merit and should be dismissed.

### *Factual Background*

The state appellate court set forth the following statement of facts in its opinion:

The complainant, S.C., testified at trial that on July 13, 2004, she was twelve years old.  That morning, she was alone in the mobile home where she lived with her mother and step-father.  While she was taking a shower, she heard her dog bark.  After she got dressed, she looked out front and saw an older Cadillac drive by.  She thought it may have been gold in color but was not sure.  A short time later, while she was preparing her lunch in the kitchen, she heard a knock on the front door.  She did not answer it under prior instructions from her mother, but the knock came again and then someone began banging on the door.  It scared her.  Suddenly, a gun broke through the window of the door and fell on the floor.  She ran to the gun and picked it up.  She tried to fire it to scare away whoever was outside, but the gun did not discharge.  She

described the gun as a black and silver pistol about five to six inches long.  She said it felt light when she picked it up, but it felt like a real gun.  The door burst open, and the complainant dropped the gun.  She ran back towards the kitchen, but an Hispanic man entered the home, caught her, forced her to her knees, and dragged her to a couch.  He then picked her up off the couch and put her on the floor on her knees.  There, he bound her hands behind her back and put a blanket over her head.  She felt something through the blanket that felt like he put a gun to her head.  She said it felt metallic and heavy and was shaped like a gun.  She told him that she had asthma and said, 'You don't want to hurt me do you?'  She said that she did this, even though she does not have asthma, because she knew that she would have to identify the intruders later, and she needed to get a good look at them.  The man took the blanket off her head.

In total, three men entered the home, two Hispanic men and one black man, whom the complainant identified as appellant.  Each man had a gun, and each wore what complainant described as a 'sheriff's jacket.'  When they first entered, one of them said 'Where is the drugs? Where is the drugs?'  To which complainant responded:   'We don't have any drugs here. You've got the wrong house.'  The men then searched the premises, with appellant searching through drawers in the kitchen.   She said that she got a good look at appellant's face when he was ten feet or less away from her, even though she was not wearing her prescription glasses at the time.  She described his clothes and stated that he had a gun in his back pocket.  She said the handle looked the same as the one that had come in through the window, and it made her more afraid to see it.  Complainant asked appellant what they were going to do to her and if they were going to hurt her, and he responded that no one was going to hurt her.  She then asked if they were leaving and if they were coming back, and one of the men responded that they were going outside to 'talk to our deputy.'  The men left, and a short time later, the complainant managed to unbind her hands and run for help.

Officer Eddie Wilkerson of the Pasadena Police Department testified that on July 13, 2004, he was dispatched to the scene of a reported home invasion in a mobile home park.  At the scene, he spoke to complainant, who was a little bit distraught and visibly shaken but had begun to calm down.  Complainant handed him a black plastic tie wrap, which she said had been used to bind her hands. In response to Wilkerson's questioning, complainant described for him the course of events in similar detail to how she testified at trial.  Wilkerson

said that complainant described the black male intruder as '[a]bout 5'10' and around 32 years old.  She described the gun that came through the window as 'light' and 'maybe even a toy.'  She also stated that she picked it up and tried to fire it to scare away whoever was outside, but the gun only clicked.  She stated that the intruders were all wearing blue jackets that had gold lettering on the back, reading 'sheriff.'  Wilkerson further stated that upon arrival, he observed blood at the front door where the glass was broken as well as in the kitchen area.  He also found a for sale sign by the front door.

Detective Kirk Bonsal of the Pasadena Police Department testified that on July 13, 2004, he responded to the scene of a reported home invasion.  Upon arrival, he spoke with Officer Wilkerson and surveyed the scene with the crime scene officer.  Detective Bonsal also saw a for sale sign at the scene, which he was told did not belong there.  He said that the front of the sign read 'For sale' and ' '92 Cadillac,' and had a telephone number on it.  Bonsal then spoke with complainant.  It was then about 45 to 50 minutes after the originating call was received.  He said that she was still visibly shaken and upset and that it looked like she had been crying.  She was not crying at the time he spoke to her.  Her description of events to him was similar to her trial testimony and that of Officer Wilkerson.  Bonsal additionally testified that detectives traced the phone number on the for sale sign to a former owner of a silver or grayish-silver 1992 Cadillac.  Some time later, appellant was pulled over by another officer while driving the vehicle in question.  Bonsal then placed a photograph of appellant in a photographic lineup, which he presented to complainant.  She identified appellant as the black male intruder.  She had seen three prior photo spreads without having identified anyone as being involved in the robbery.  She stated that one of the photographs in an earlier lineup looked like one of the intruders, but she could not be sure.

Officer Brian Diettrich of the Houston Police Department testified that he stopped appellant because the gray Cadillac he was driving had no front license plate.  When Diettrich ran the license number for the vehicle, he discovered that it was wanted in relation to an aggravated robbery.  After detaining appellant, Diettrich inventoried the vehicle.  In a black zippered bag in the trunk, he found a loaded .22 caliber pistol along with several papers bearing appellant's name.  Defense counsel objected to admission of the pistol and Diettrich's testimony regarding the pistol as being irrelevant and unduly prejudicial.

5

Officer Larry Jaramillo of the Pasadena Police Department testified regarding the crime scene investigation conducted at the scene of the robbery.  During cross-examination, defense counsel asked Jaramillo about the collection of blood samples at the scene.  In response, he testified that blood samples were taken and analyzed at the crime lab, but the results did not implicate appellant.  During re-direct examination, the prosecutor elicited from Jaramillo that police officers and crime lab personnel were subject to subpoena by defense counsel, so that if a defense attorney wanted to call the person who tested blood samples to determine the source, the attorney could have done so.  Defense counsel objected on relevance and speculation grounds.  Later, after the jury was removed for a break, defense counsel moved for a mistrial on the basis that the prosecutor's questions had shifted the burden of proof.  The trial court denied the motion.

At the close of evidence, the jury found appellant guilty of aggravated robbery.  He pleaded true to an enhancement paragraph, and the trial court sentenced him to 45 years in prison.

*Young*, at *1–3.

### *The Applicable Legal Standards*

A.    <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the

6

Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Miller-El*, 537 U.S. at 330–31; 28 U.S.C. § 2254(e)(1).

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is

7

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software*, *Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual

prejudice as a result of such deficient performance.  *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

9

Petitioner argues that trial counsel was ineffective in the following instances.

A.    Expert Fingerprint Witness

Petitioner agues that trial counsel was ineffective in failing to retain a fingerprint expert to establish whether his or his accomplices' fingerprints or blood were at the crime scene or on the "for sale" sign.

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I personally viewed the 'For Sale' sign. The 'For Sale' sign was dusted with the powder and I could plainly see that the 'For Sale' sign did not have any identifiable fingerprints. I did not find it necessary or beneficial to hire a fingerprint expert. A fingerprint expert from the State testified that the 'For Sale' sign did not contain any fingerprint[s].

*Ex parte Young*, p. 98.

In denying petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

2.    According to the record at the trial the 'for sale' sign was dusted for prints, and none were found.

3.    According to the credible affidavit of trial counsel, he personally inspected the sign after it had been dusted, and became (sic) it was clear there were no identifiable fingerprints on the sign, it was neither beneficial or necessary to hire an independent expert to inspect the sign.

*          *          *          *

12.    [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable

10

probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.  The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, pp. 106–07.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  *Strickland*, 466 U.S. at 691.  However, in assessing unreasonableness, a heavy measure of deference must be applied to counsel's judgments.  *Id.*  A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986) ("Since Lewis has not pointed out any evidence which would have been produced by a more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of trial, no prejudice has been shown.").  Petitioner here fails to present any probative summary judgment evidence that a fingerprint expert would have provided evidence beneficial to the defense, especially in light of the State's own expert's testimony that no fingerprints were found on the sign.  Nor does petitioner present probative summary judgment evidence of any other specific, beneficial evidence that an expert witness would have provided had such expert been retained.  *See Evans v. Cockrell*, 285 F.3d 370, 377–78 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed to

11

present probative evidence of what a particular expert would have stated). Thus, petitioner fails to prove that, but for counsel's failure to retain a fingerprint or other expert, there is a reasonable probability that the result of his trial would have been different.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

B.   <u>Prior Vehicle Owner</u>

Petitioner contends that trial counsel was ineffective in failing to interview Mr. Gonzales, the prior owner of petitioner's Cadillac, to see if he had removed the "For Sale" sign from the car when petitioner purchased it. Petitioner argues that Gonzales could have testified that petitioner did not take the sign with him when he bought the vehicle.

In responding to this claim on collateral review, trial counsel testified in his affidavit as follows:

> Investigator Castillo went to Gonzales' residence and discovered that Gonzales had left the United States and apparently went to Mexico. Other attempts were made to locate Gonzales. All information showed that Gonzales went to Mexico.

\* \* \* \*

12

Investigator [Castillo] interviewed the [petitioner] and obtained information for this case.  Counsel also talked with [petitioner] and discussed the entire case and evidence.

\*     \*     \*     \*

Investigator Castillo went to Gonzales' residence and discovered that Gonzales had left the United State[s] and apparently went to Mexico.

*Ex parte Young*, p. 99.

In denying petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

4.   According to the credible affidavit of trial counsel, he attempted to find the seller of the [petitioner's] recently bought car, a Mr. Gonzales, but an investigator discovered that the potential witness had left the country for Mexico.

\*     \*     \*     \*

12.  [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.  The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, pp. 106–07.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

The record shows that trial counsel took reasonable steps to locate Gonzales, but that Gonzales had apparently gone to Mexico.  Petitioner fails to present probative summary

13

judgment evidence that, with further or other specific investigation, trial counsel could have located Gonzales and that Gonzales would have testified favorably for petitioner at trial. Consequently, neither petitioner nor the record establishes that, but for any error on the part of trial counsel, there is a reasonable probability that the result of the trial would have been different.  Petitioner establishes neither deficient performance nor prejudice.

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

C.      Closing Argument

Petitioner asserts that trial counsel was ineffective in failing to argue at closing argument that petitioner was working during the time the offense was committed and that he owned a gray Cadillac.  Petitioner furthers argues that trial counsel failed to argue that a Crime Stoppers tip suggested that another person, Michael Lewis, had committed the offense.[2]

In responding to this issue on collateral review, trial counsel testified in his affidavit as follows:

---

[2]One of the police officers testified at trial that someone had called Crime Stoppers and reported that the crime for which petitioner was ultimately convicted, was the kind of thing "Michael Lewis" would do. R.R., Vol. 4, pp. 27–28, 36, 40, 44. As a result, a picture of Michael Lewis was placed in a photo line-up and shown to complainant, who did not identify him.  *Id.*

If alibi was established[,] it was argued.  The jury heard the witnesses in [sic] at trial and gave weight to the evidence, and if alibi was presented, the jury heard in [sic] and gave what [sic] weight to the evidence.  If alibi was established, and not argued, then counsel felt confident that the jury heard the evidence and gave it the proper weight it deserved.

*   *   *   *   *

Investigator Castillo interviewed all prospective witnesses and there was not any evidence, that could be admissible, that established that a Michael Lewis committed the offense.

*Ex parte Young*, p. 100.

In denying petitioner's claims of ineffective assistance of trial counsel, the trial court

on collateral review made the following relevant findings:

5.   According to the credible affidavit of trial counsel, counsel did not reemphasize the [petitioner's] alibi defense in closing because he felt confident that the jury heard the evidence and gave it the proper weight.

6.   According to the credible affidavit of trial counsel, his investigator interviewed all prospective witnesses, and no admissible evidence could be established that a Michael Lewis committed the crime for which the [petitioner] was convicted.

*   *   *   *   *

12.   [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.   The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, p. 107.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

The record shows that petitioner's two purported alibi witnesses did not testify that petitioner had been at work during the time the offense was committed.  To the contrary, they testified only that the job they had been working on had been completed prior to the date of the offense.  R.R., Vol. 4, pp. 158, 162, 164.  Because there was no testimony establishing that petitioner had been at work at the time of the offense, trial counsel could not make that argument during closing argument.  Moreover, trial counsel emphasized during closing argument that complainant identified the vehicle as "gold" but that petitioner's vehicle was actually gray, and that someone had called Crime Stoppers and implicated an individual named Michael Lewis.  *Id.*, pp. 175–76, 179.

Courts defer heavily to an attorney's actions and professional judgment.  *Strickland*, 466 U.S. at 689.  Claims raised under *Strickland* receive "doubly deferential federal judicial review" when the state courts have already adjudicated their merits.  *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009); *Cullen v. Pinholster*, ___U.S. ___, 131 S. Ct. 1388, 1410 (2011).  In practice, this standard gives wide latitude to state adjudications: "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter*, ___U.S. ___, 131 S. Ct. 770, 788 (2011).  Neither petitioner nor the record before this Court evinces that trial counsel's trial strategy and decisions regarding closing argument were not reasonable.

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this claim.

D.   Impeachment

Petitioner complains that trial counsel should have produced color pictures of petitioner's Cadillac to cross-examine complainant about her ability to identify cars.  It is petitioner's contention that, because the complainant did not accurately identify or describe the vehicle involved in the offense, his vehicle was improperly targeted.

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> The complainant described the vehicle as gold as best as she could.  The view of the vehicle was through the window/door.  The [petitioner's] vehicle description by the complainant was very similar or almost identical to [petitioner's]. The seller was given [petitioner's] vehicle for non-payment. The seller left the country with the vehicle.  It was not necessary or beneficial to introduce pictures of [petitioner's] vehicle.

> \*   \*   \*   \*

> The complainant described the vehicle to the best of her ability and [the] description was the same description as [petitioner's] vehicle. The complainant was questioned about the vehicle and it[s] description.

*Ex Parte Young*, p. 101.

17

In denying petitioner's claims of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

7.   According to the credible affidavit of trial counsel, he could not take pictures of the [petitioner's] vehicle to show the jury, because it was returned to the seller for non-payment, and the seller left the country before trial.

8.   According to the credible affidavit of trial counsel, trial counsel believed the complainant was adequately questioned regarding her description of the vehicle.

                            *   *   *   *   *

12.   [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.   The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, p. 107.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

A review of the state court record supports the trial court's findings.  Moreover, petitioner fails to present probative summary judgment evidence that color pictures of his vehicle were available for trial or could have been obtained for trial, or what specific additional cross-examination trial counsel could have pursued that would have impeached complainant's identification and description of the vehicle she observed.  Neither petitioner nor the record establish that, but for any error on the part of trial counsel regarding the

complainant's identification of the vehicle, there is a reasonable probability that the result of the trial would have been different.  Petitioner establishes neither deficient performance nor prejudice.

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this claim.

E.      Motion for Discovery

Petitioner complains that trial counsel failed to file a motion for discovery to cause the State to produce the plastic ties used to restrain complainant and medical records to prove complainant's injuries.  Petitioner incorrectly argues that the State did not produce the plastic ties; they were introduced into evidence at trial.  R.R., Vol. 3, p. 25; State's Exhibit 29.

In responding to petitioner's claim regarding the medical records, trial counsel testified in his affidavit on collateral review as follows:

> The pictures of complainant's scratched knee and arm's redness were self explanatory and minor.  There was not any need to obtain any medical records if said records even existed.

*Ex parte Young*, p. 102.

In denying petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

19

9.     According to the credible affidavit of trial counsel, it was not necessary
       to subpoena any medical records of the complainant, because counsel
       did not have any reason to believe that medical records existed, and the
       photographs of the injuries spoke for themselves.

                              *     *     *     *

12.    [Petitioner] fails to show that in any of his alleged instances of
       ineffective assistance of counsel, that counsel's representation fell below
       an objective standard of reasonableness or that a reasonable probability
       exists that, but for counsel's unprofessional errors, the result of the
       proceeding would have been different.

13.    The representation [petitioner] received at trial was sufficient to protect
       his right to reasonably effective assistance of counsel.

*Ex parte Young*, p. 107.  The Texas Court of Criminal Appeals expressly relied on these

findings in denying habeas relief.

    Petitioner fails to present probative summary judgment evidence that medical records

existed of petitioner's injuries incurred during the offense, and that the medical records would

have been available for trial.  Petitioner further fails to show that the medical records would

have been admissible and that they contained information beneficial to the defense beyond

the photographs introduced at trial.  Neither petitioner nor the state court records show that,

but for counsel's failure to obtain complainant's medical records, there is a reasonable

probability that the result of the trial would have been different.  Petitioner's conclusory

allegations that trial counsel was ineffective in not obtaining the medical records are

insufficient to raise a material fact issue precluding summary judgment.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

    F.    <u>Failure to Investigate</u>

Petitioner argues that trial counsel failed to hire an investigator to locate other witnesses or suspects. Petitioner's allegations regarding lack of an investigator are factually incorrect; the record is clear that trial counsel utilized an investigator for purposes of investigation and trial preparation.

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I had investigator Castillo go to the crime scene, to Gonzales' home and all he could find [sic]. The witness Gonzales disappeared and went to Mexico. Counsel also went to the crime scene and viewed the location.

*Ex parte Young*, p. 102.

In denying petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

> 10.    According to the credible affidavit of trial counsel, both counsel himself, as well as his investigator viewed the crime scene and searched for any possible witnesses.

*   *   *   *

21

12.    [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.    The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, p. 107.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Petitioner fails to present any probative summary judgment evidence of witnesses or potential suspects who could have been, but were not, investigated by Castillo or trial counsel, or that such individuals were available for trial and would have testified favorably for the defense.  The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative.  *See*, *e.g.*, *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).  Thus, to prevail on an ineffective assistance claim based on counsel's failure to present a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Id.*  Petitioner has done none of this.  Nor has he presented probative summary judgment evidence that someone other than himself actually committed the offense.  Consequently, he fails to establish that, but for

counsel's alleged deficient performance, there is a reasonable probability that the result of the trial would have been different.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

G.   Jury Charge

Petitioner contends that trial counsel failed to object to the jury charge because it included an instruction on the law of parties. In responding to this claim, trial counsel testified in his affidavit on collateral review as follows:

> The State proved that more than two people committed the offense that [petitioner] was charged with. The evidence established more than one person committed the offense. Therefore, the State was entitled to the inclusion on the law of parties in the jury charge.

*Ex parte Young*, p. 102.

In denying petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

> 11.   According to the credible affidavit of trial counsel, he did not object to the court's inclusion of a jury instruction on the law of parties in the jury charge, because he believed as a matter of law, the State was entitled to it.

12.    [Petitioner] fails to show that in any of his alleged instances of ineffective assistance of counsel, that counsel's representation fell below an objective standard of reasonableness or that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.    The representation [petitioner] received at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Young*, p. 107.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Petitioner fails to show that, had counsel objected to the law of parties jury charge, the objection would have been granted and the instruction removed from the jury charge.  Counsel was not required to make a meritless objection to the jury charge.  *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Nor does petitioner demonstrate that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different.  Consequently, neither deficient performance nor prejudice have been shown.

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this claim.

### *Ineffective Assistance of Appellate Counsel*

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Id*. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

Petitioner claims that appellate counsel was ineffective in failing to raise the above instances of ineffective assistance of trial counsel and in failing to challenge the sufficiency of the evidence to support his conviction under the law of parties.

In denying petitioner's claims of ineffective assistance of appellate counsel, the trial court on collateral review made the following relevant finding:

> 14. The [petitioner] fails to show that appellate counsel's decision not to
> raise ineffective assistance of counsel at trial was outside the prevailing
> norms of professional judgment, or that but for counsel's decision, a
> reasonable probability exists that the result of the proceeding would
> have been different.

*Ex parte Young*, p. 107 (citations omitted).  The Texas Court of Criminal Appeals expressly

relied on this finding in denying habeas relief.

This Court has already rejected petitioner's assertions of ineffectiveness against trial

counsel, and petitioner fails to show that appellate counsel was ineffective in failing to raise

those claims on appeal.  Petitioner has not shown that, but for appellate counsel's failure to

raise these claims on appeal, there is a reasonable probability that the result of the appeal

would have been different.

Nor does petitioner meet his burden of proof under *Strickland* to show that, but for

appellate counsel's failure to challenge the sufficiency of the evidence regarding the law of

parties, there is a reasonable probability that the result of the appeal would have been

different.  To the contrary, petitioner does little more than aver that appellate counsel should

have raised the issue.  This is insufficient to prevail under *Strickland*.  Further, the

intermediate court reviewed the factual and legal sufficiency of the evidence to support the

conviction, and found the evidence sufficient.  This Court's own review of the sufficiency of

the evidence supports the intermediate court's holding.  Petitioner establishes neither deficient

performance nor prejudice.

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this claim.

### Trial Court Error

Petitioner raises the following three grounds for trial court error.

### A.   Failure to Grant a Mistrial

Petitioner argues that the trial court erred in failing to grant a mistrial after the prosecution allegedly shifted the burden of proof from the State to the defense during its questioning of Officer Jamarillo.    Respondent correctly argues that this claim is unexhausted and procedurally defaulted because petitioner failed to pursue the issue in a petition for discretionary review to the Texas Court of Criminal Appeals.  Regardless, the claim is without merit.

In rejecting this ground on direct appeal, the intermediate state court of appeals found as follows:

> In his first issue, appellant contends that the trial court erred in refusing to grant a mistrial when the prosecutor allegedly shifted the burden of proof while questioning Officer Jaramillo regarding subpoena powers.  In a criminal prosecution, the State has the burden of proving all elements of the charged offense beyond a reasonable doubt.  Appellant argues that by questioning Jaramillo on defense counsel's right to subpoena police officers and crime lab

27

personnel, the prosecutor suggested that the defense had a burden to bring forth evidence exonerating appellant.

Generally, as a prerequisite to bringing alleged error on appeal, a defendant must have preserved the alleged error in the trial court.  In order to preserve alleged error, a defendant must usually make an objection, and pursue the issue until the court issues an adverse ruling.  If the court sustains the objection, the defendant should request a curative instruction; if the judge gives the requested instruction, the defendant should request a mistrial.  Here, defense counsel objected as to relevance and speculation when the prosecutor asked the questions related to subpoena powers but did not raise the burden-shifting argument.  Later, when the court ordered a brief recess in the proceedings, defense counsel moved for a mistrial on the burden-shifting argument without ever having objected on that ground or having requested a curative instruction.  Thus, defense counsel failed to preserve the argument for appeal.

Appellant asserts that a shift in the burden of proof constitutes fundamental error and therefore requires no objection, citing *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000).  The *Blue* case involved a trial judge's comments that 'vitiated the presumption of innocence,' resulting in fundamental error that required no objection.  In the present case, the trial court explained the State's burden of proof during voir dire and specifically explained that the defense did not have to offer any proof.  The prosecutor echoed this explanation in his voir dire statements.  The jury charge also placed the burden of proof squarely on the State.  In light of these repeated proper statements of the burden of proof, the prosecutor's alleged burden-shifting statements did not constitute fundamental error.

*Young*, at *3–4 (citations omitted).

This Court has reviewed the record and finds the state court's determination reasonable under the record before it.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

28

Moreover, trial court rulings are matters of state law that are not subject to reexamination by the federal courts.  It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  If an erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief if the error is not harmless within the meaning of *Brecht v. Abrahamson* – that is, that the error had a substantial and injurious effect or influence in determining the verdict.  507 U.S. 619, 637–38 (1993).  The petitioner must show that the error actually prejudiced him.  *Id.* at 637.  Petitioner fails to establish the violation or denial of a constitutional right by the trial court's denial of a mistrial.

No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

B.    Allowing Hearsay Testimony

In this claim, petitioner complains that the trial court erred in allowing the State to elicit hearsay evidence from Officer Bonsal.  Respondent correctly argues that this claim is unexhausted and procedurally defaulted because petitioner failed to pursue the issue in a petition for discretionary review to the Texas Court of Criminal Appeals.  Regardless, the claim is without merit.

In rejecting this issue on direct appeal, the state court of appeals held as follows:

In his second issue, appellant contends that the trial court erred in admitting the hearsay testimony of Detective Bonsal. 'Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' Tex. R. Evid. 801(d). Hearsay testimony is not admissible unless it falls under one of several exceptions. A trial court's ruling on admissibility under a hearsay exception will not be reversed unless the trial court abused its discretion.

Appellant specifically complains that during his testimony Detective Bonsal recounted statements made to him by complainant after the robbery. The trial court expressly permitted this testimony under the 'excited utterance' exception to the hearsay rule. An 'excited utterance' is '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' Appellant does not dispute that the home invasion suffered by complainant was a very startling event that caused her considerable stress and excitement. He contends, however, that by the time Detective Bonsal interviewed complainant, she had significantly calmed down from the experience. Indeed, the critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. Although a court may take into consideration the time elapsed between the event and the statements and whether the statements were volunteered or in response to questioning, such factors are not dispositive.

Here, Officer Wilkerson, who spoke to complainant prior to Bonsal's interview of her, stated that complainant was a little bit distraught and visibly shaken but had begun to calm down. Bonsal testified that he spoke with complainant about 45 to 50 minutes after the originating call was received, and at that time, she was still visibly shaken and upset, and it looked like she had been crying. Although Wilkerson's testimony includes the suggestion that complainant had begun to calm down, the totality of Wilkerson's and Bonsal's testimony, coupled with the severity of the startling event, was sufficient for the trial court to conclude that complainant was still dominated by the emotions, excitement, fear, or pain of the event at the time of Bonsal's interview.

*Young*, at *4–5 (citations omitted).

30

This Court has reviewed the record and finds the state court's determination reasonable under the record before it.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

Again, it is not for this Court to second guess the state court's determination that the complained-of evidence was admissible under state law.  *Estelle*, 502 U.S. at 67–68. Petitioner fails to show that the admission of the evidence violated a specific federal constitutional protection or right.  He further fails to show that admission of the evidence, even assuming error, had a substantial and injurious effect or influence in determining the verdict.  *Brecht*, 507 U.S. at 637–38.  Petitioner fails to establish the violation or denial of a constitutional right by the trial court's admission of the evidence, or to meet his burden of proof under the AEDPA standards of review.

No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

C.    <u>Admitting the Gun Into Evidence</u>

Petitioner complains that the trial court erred in allowing into evidence the gun that was found in his vehicle when he was later stopped by the police.  Respondent correctly argues that this claim is unexhausted and procedurally defaulted because petitioner failed to pursue the issue in a petition for discretionary review to the Texas Court of Criminal Appeals. Regardless, the claim is without merit.

In rejecting this claim on direct appeal, the state court of appeals held as follows:

In his third issue, appellant contends that the trial court erred in admitting evidence that police found a pistol in the trunk of his vehicle when they arrested him.   Specifically, appellant argues that the evidence (1) constituted inadmissible evidence of an extraneous offense, (2) was irrelevant, and (3) was more prejudicial than probative.  Evidence is deemed relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'  TEX. R. EVID. 401.  Relevant evidence is generally admissible unless 'its probative value is substantially outweighed by they danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.'  *Id*. 402, 403.  'Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]'  *Id*. 404.  A trial court's decision on the admissibility of evidence is reviewed under an abuse of discretion standard.

We begin by noting that the extraneous offense in question, felon in possession of a firearm, was apparently never presented to the jury.  Appellant points to no place in the record where his prior record was discussed during the guilt/innocence stage. Further, Officer Diettrich testified on cross-examination that the best and safest place for a citizen to transport a firearm is in the trunk. Thus, we consider appellant's arguments concerning possession of the firearm in light of the fact that the jury was never told such possession was illegal.

Appellant asserts that the evidence related to the gun was irrelevant because the State could not show any connection between the gun and the robbery charged. Although complainant did not specifically identify the pistol found in appellant's vehicle as one used during the robbery, her description of the pistols used during the robbery generally matched the pistol found in appellant's vehicle.  It is additionally noteworthy that the weapon was found inside a vehicle that closely matched complainant's description of a vehicle on the scene at the time of the robbery and which was tied to the robbery by way of a for sale sign found at the scene.  Thus, the State did establish some degree of connection between the pistol found in appellant's vehicle and the pistol used in the robbery.  Appellant's possession of the pistol therefore makes the

existence of the facts that he committed the robbery and that a weapon was used during the robbery more probable. Accordingly, the evidence regarding the pistol was relevant, and appellant's second argument is without merit.

We next consider whether admission of the evidence was unfairly prejudicial to appellant. 'Unfair prejudice,' of course, cannot mean just that the evidence injures the appellant's case, such being the State's central objective in offering evidence; rather, it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Appellant insists that the pistol evidence was unfairly prejudicial because it suggested to the jury that he was a bad person, was in the habit of carrying a weapon, and might have had a weapon during the robbery. While the strength of the evidence was somewhat muted by (1) the fact that complainant did not specifically identify the weapon as one used in the robbery and (2) the two-month delay between the robbery and the finding of the weapon in appellant's vehicle, we believe that the probative strength of the evidence as discussed above was sufficient to bring the issue of unfair prejudice within the realm of reasonable disagreement. Accordingly, we will not disturb the trial court's application of its discretion.

*Young*, at *5–6 (citations omitted).

Once again, it is not this Court's role under the AEDPA standard of review to second guess the state court's determination that the complained-of evidence was admissible under state law. *Estelle*, 502 U.S. at 67–68. Petitioner fails to show that the admission of the evidence violated a specific federal constitutional protection or right. He further fails to show that admission of the evidence, even assuming error, had a substantial and injurious effect or influence in determining the verdict. *Brecht*, 507 U.S. at 637–38. Petitioner fails to establish the violation or denial of a constitutional right by the trial court's admission of the evidence, or to meet his burden of proof under the AEDPA standard of review.

This Court has reviewed the record and finds the state court's determination reasonable under the record before it.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### *Sufficiency of the Evidence*

Petitioner contends that the evidence was insufficient to support the conviction.  As correctly noted by respondent, petitioner did not seek discretionary review of his sufficiency challenge by the Texas Court of Criminal Appeals, and the issue is unexhausted and procedurally defaulted at this juncture.  Regardless, the claim is without merit.

Factual insufficiency of the evidence is not a cognizable federal habeas ground. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Woods v. Cockrell*, 307 F.3d 353, 357–58 (5th Cir. 2002).  Accordingly, petitioner's argument raises only a legal sufficiency challenge.  Evidence is legally sufficient to support a criminal conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id*.  Any contradictory testimony does not affect the validity of the guilty verdict. *Id*.  The

evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence.  *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

In rejecting petitioner's legal sufficiency challenges to the issues of the weapons and his intent to deprive, the intermediate state court of appeals held as follows:

> In his fifth issue, appellant contends that the evidence was legally insufficient to support his conviction because there was inadequate proof of the weapon used during the commission of the offense.  A person commits aggravated robbery if, among other possibilities, he or she uses or exhibits a deadly weapon during the course of a robbery.  TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2003). The Texas Penal Code lists two categories of 'deadly weapons.' *Id.* § 1.07 (Vernon Supp. 2006).  The first category is comprised of those instruments designed to be deadly weapons, including 'a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.'  TEX. PENAL CODE ANN. § 1.07(a)(17)(A).  The second category is comprised of those instruments whose use transforms them into deadly weapons, including 'anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.' *Id*. § 1.07(a)(17)(B).  Here, the indictment specifically charged that appellant used and exhibited a firearm while committing robbery. The jury charge further instructed the jury under the law of parties.  Thus, the State had the burden to prove beyond a reasonable doubt that appellant, or someone that he was criminally responsible for, used and exhibited a firearm during the robbery.

> Complainant testified that after someone began banging on the door of her home, a gun burst through the window and landed on the floor.  She described the gun as a black and silver pistol about five to six inches long and said that although it felt light when she picked it up, it felt like a real gun.  She further stated that each of the three men who invaded her home was carrying a gun and that appellant's gun had the same type of handle as the gun that came in through the window.   Additionally, Officer Diettrich testified that when he arrested appellant, he found a firearm in the trunk of appellant's vehicle.  The firearm generally matched complainant's description of the gun that burst through the window.  Appellant's vehicle was also connected to the robbery through the testimony of complainant and Detective Bonsal.  While it is true that (1) complainant did not specifically testify that the firearm recovered from

appellant's vehicle was used in the robbery, and (2) Officer Wilkerson testified that complainant told him that the gun 'felt light and to her maybe even a toy,' these were matters for the jury to consider and do not in and of themselves render the evidence legally insufficient.

Appellant is correct that the term 'gun' is a more general term than 'firearm' because it encompasses weapons such as BB guns and pellet guns, whereas 'firearm' does not.  Thus, there generally needs to be something more than just testimony that a defendant had a 'gun' to prove that a defendant had a 'firearm.'  Here, although complainant did repeatedly use the term 'gun' to describe the weapons possessed by the three men who invaded her home, she also stated that the gun that she picked up felt like a real gun, and she said that one of the men put a heavy, metal gun to her head.   Additionally, there was evidence that appellant later had in his possession a weapon generally fitting complainant's description of the gun she picked up.  We find that this evidence was legally sufficient to support the finding that a firearm was used or exhibited during the robbery by appellant or someone for whom he was criminally responsible.

In his sixth issue, appellant contends that the evidence was legally insufficient to support his conviction because there was no evidence that anything was taken during commission of the offense or that appellant possessed the intent to deprive the complainant of property.  Actual commission of theft, however, is not a prerequisite to the commission of robbery.  Furthermore, an intent to steal may be inferred from a defendant's own conduct.

Appellant points out that (1) no property was taken from the home, (2) there was no indication the family kept drugs at the home, and (3) complainant told the men that they were in the wrong house.  However, none of these facts contradicts complainant's testimony that three men burst into the mobile home where she lived, bound her hands, demanded to know where drugs were being kept, and searched through the home.  The clear implication from this testimony was that the intruders intended to remove property from the home. (FN1. As mentioned, the jury was charged under the law of parties; thus, appellant could have been found guilty even if he himself did not demand to know where the drugs were.  Complainant did indicate that appellant searched the premises.)  Thus, the evidence was legally sufficient to support the jury's finding on the intent element.

*Young*, at* 7–8 (citations omitted).

36

This Court has independently reviewed the record and finds the evidence sufficient to support the conviction, including the issues of a weapon and intent to deprive, for the reasons, and under the statement of facts, set forth by the intermediate court in its opinion. *Jackson*, 443 U.S. at 319. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### *Compulsory Process*

Petitioner complains that he was denied his constitutional right to compulsory process because trial counsel failed to subpoena Gonzales, the prior owner of the Cadillac, to ask him about the "for sale" sign that was found at the scene of the offense.

The Sixth Amendment to the United States Constitution provides that, in all criminal prosecutions, the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor. U.S. CONST. amend. VI. The right of defendants to subpoena witnesses rests ultimately upon the Sixth Amendment guarantee of compulsory process and its violation constitutes a denial of due process. *Thor v. United States*, 574 F.2d 215 (5th Cir. 1978). However, the constitutional right is not absolute. *Ross v. Estelle*, 694 F.2d 1008 (5th Cir. 1983). When requesting a trial court to subpoena a witness, a criminal defendant has the duty to demonstrate the necessity of the particular witness's testimony. *United States v. Soape*, 169 F.3d 257, 268 (5th Cir. 1999); *see also United States v. Valenzuela-Bernal*, 458

U.S. 858, 867 (1982) (holding that a defendant cannot establish a violation of the constitutional right to compulsory process merely by showing that he was deprived of certain testimony, but must make a plausible showing that the testimony would have been both material and favorable to his defense).

Petitioner in the instant case provides no probative summary judgment evidence, and the record does not otherwise establish, that Gonzales was available or would have presented relevant evidence beneficial to the defense.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross*, 694 F.2d at 1011.  Petitioner did not provide the state courts with an affidavit regarding the substance of Gonzales' proposed trial testimony, or proof that Gonzales would have testified at trial.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  The state court found that Gonzales was not available, and petitioner fails to rebut the presumed correctness of this finding with clear and convincing evidence.  *Miller-El*, 537 U.S. at 330–31; 28 U.S.C. § 2254(e)(1).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

38

### *Evidentiary Hearing*

Petitioner requests an evidentiary hearing, and argues that he was not provided a "full and fair" fact finding hearing regarding his habeas claims at the state court level. He asserts entitlement to an evidentiary hearing before this Court.

Under the AEDPA, evidentiary hearings are granted only if a petitioner's claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence" and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).

Here, petitioner fails to show how any claim relies on either a "new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(A).  Petitioner also fails to show how the facts underlying any claim would be able to "establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying cause."  28 U.S.C. § 2254(e)(2)(B).  Nor does petitioner explain how the state court's findings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the

evidence[.]"  28 U.S.C. § 2254(d).  To merit an evidentiary hearing in this Court, petitioner must structure his argument pursuant to the requirements outlined by the AEDPA. Petitioner's generic request for an evidentiary hearing fails to do so, and he is not entitled to such hearing if his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." *Young v. Herring*, 938 F.2d 543, 560 n.12 (5th Cir. 1991).  Petitioner's conclusory allegations are insufficient to state a constitutional claim and, therefore, his claim falls short of fulfilling the requirements set out in the AEDPA.  *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  Petitioner is not entitled to an evidentiary hearing.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 12) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on December 12, 2011.

_____
Gray H. Miller
United States District Judge

40